BMR:TJS
F.#2005R00060

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

VINCENT BASCIANO,
    also known as "Vinny
    Gorgeous" and "Vinny
    from the Bronx,"
DOMINICK CICALE,
ANTHONY AIELLO,
    also known as "Ace" and "T,"
VINCENZO MASI,
    also known as "Vinny,"
FRANK ESPOSITO,
    also known as "Fat Frank,"
    and
EUGENE GALLO,
    also known as "Gene,"

             Defendants.

- - - - - - - - - - - - - - - X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. 05 Cr. 0060 (S-3)(NGG)
(T. 18, U.S.C., §§ 894(a)(1),
   924(c)(1)(A)(iii), 1955,
   1959(a)(1), 1959(a)(3),
   1959(a)(5), 1959(a)(6),
   1962(c), 1962(d), 1963, 2 and
   3551 et seq.)

THE GRAND JURY CHARGES:

<u>INTRODUCTION TO ALL COUNTS</u>

      At all times relevant to this superseding indictment,
unless otherwise indicated:

<u>The Enterprise</u>

      1. The members and associates of the Bonanno organized
crime family of La Cosa Nostra (the "Bonanno family"), also known

as the Massino family, constituted an "enterprise," as defined in
Title 18, United States Code, Section 1961(4), that is, a group of
individuals associated in fact.  The Bonanno family engaged in, and
its activities affected, interstate and foreign commerce.  The
Bonanno family was an organized criminal group that operated in the
Eastern District of New York, other parts of the United States and
Canada.

2.   The Bonanno family operated through groups of
individuals headed by "captains," who were also referred to as
"skippers," "caporegimes" and "capodecinas."  These groups, which
were referred to as "crews," "regimes" and "decinas," consisted of
"made" members of the Bonanno family, also referred to as
"soldiers," "friends of ours," "good fellows" and "buttons," as
well as associates of the Bonanno family.

3.   Each captain was responsible for supervising the
criminal activities of his crew and providing crew members and
associates with support and protection.  In return, the captain
received a share of the earnings of each of the crew's members and
associates.

4.   Above the captains were the three highest-ranking
members of the Bonanno family.  The head of the Bonanno family was
known as the "boss."  He was assisted by an "underboss" and a

2

counselor, who was known as the "consigliere."  With the assistance
of the underboss and consigliere, the boss was responsible for
setting policy, resolving disputes between members and associates
of the Bonanno family and members and associates of other criminal
organizations, and approving all significant actions taken by
members and associates of the Bonanno family, including murder.

5.   The boss, underboss and consigliere of the Bonanno
family, who were sometimes referred to collectively as the
"administration," supervised, supported, protected and disciplined
the captains, soldiers and associates and regularly received
reports regarding the activities of the members and associates of
the Bonanno family.  In return for their supervision and
protection, the boss, underboss and consigliere received part of
the illegal earnings of each crew.  When a member of the
administration was unable to fulfill his criminal responsibilities
because of incarceration, ill health or other reason, a member of
the Bonanno family was often appointed to that position in an
acting capacity.

6.   The Bonanno family was part of a nationwide criminal
organization known by various names, including the "mafia" and "La
Cosa Nostra," which operated through entities known as "families."
The ruling body of this nationwide organization was known as the
"commission," the membership of which at various times has included

3

the bosses of the five New York City-based families, to wit: the Bonanno, Colombo, Gambino, Genovese and Luchese organized crime families.  For a period of time, the boss of the Bonanno family was removed from membership within the commission.

7.    From time to time, the Bonanno family would propose a list of associates to be "made," that is, to become members of the Bonanno family.  The list would be circulated to the other families based in New York City.

The Purposes, Methods and Means of the Enterprise

8.    The Bonanno family constituted an ongoing organization, whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.  The principal purpose of the Bonanno family was to generate money for its members and associates.  This purpose was implemented by members and associates of the Bonanno family through various criminal activities, including arson, credit card fraud, drug trafficking, extortion, kidnaping, illegal gambling, interstate transportation of stolen goods, loansharking, and robbery.  The members and associates of the Bonanno family also furthered the enterprise's criminal activities by threatening economic injury and using and threatening to use physical violence, including murder.

9.    Although the primary purpose of the Bonanno family was to generate money for its members and associates, the members and

4

associates at times used the resources of the Bonanno family to settle personal grievances and vendettas, sometimes with the approval of higher-ranking members of the Bonanno family.  For those purposes, members and associates of the enterprise were asked and expected to carry out, among other crimes, acts of violence, including murder and assault.

10.  The members and associates of the Bonanno family engaged in conduct designed to prevent government detection of their identities, their illegal activities and the location of proceeds of those activities.  That conduct included a commitment to murdering persons, particularly members or associates of organized crime families, who were perceived as potential witnesses against members and associates of the enterprise.

11.  Members and associates of the Bonanno family often coordinated street-level criminal activity, such as drug trafficking, illegal gambling, loansharking, extortion, and robbery, with members and associates of other organized crime families.

<u>The Defendants</u>

12.  At various times, the defendant VINCENT BASCIANO, also known as "Vinny Gorgeous" and "Vinny from the Bronx," was an acting boss, a captain, a soldier and an associate within the Bonanno family.  The defendant VINCENT BASCIANO became the acting boss of

5

the Bonanno family following the January 20, 2004 arrest and

incarceration of Bonanno family acting boss Anthony Urso, who

became the Bonanno family acting boss following the January 9, 2003

arrest and incarceration of Bonnano family official boss Joseph

Massino.

13.   At various times, the defendant DOMINICK CICALE was a

captain, acting captain, soldier and associate within the Bonanno

family.

14.   At various times, the defendant ANTHONY AIELLO, also

known as "Ace" and "T," was a soldier and associate within the

Bonanno family.

15.   At various times, the defendants VINCENZO MASI, also

known as "Vinny," FRANK ESPOSITO, also known as "Fat Frank," and

EUGENE GALLO, also known as "Gene," were associates within the

Bonanno family.

### VINCENT BASCIANO's Post-Arrest
### Participation in the Affairs of the Bonanno Family

16.   On or about November 19, 2004, the defendant VINCENT

BASCIANO was arrested based on a separate indictment and

incarcerated at the Metropolitan Detention Center in Brooklyn, New

York ("MDC").

17.   Following his November 19, 2004 incarceration, the

defendant VINCENT BASCIANO used a relative on his visiting list and

a criminal defense attorney to send messages from prison to members

and associates of the Bonanno family regarding the maintenance and ongoing operation of the Bonanno family.  Prior to his November 19, 2004 incarceration, BASCIANO used the criminal defense attorney and a private investigator to send messages regarding the maintenance and ongoing operation of the Bonnano family to the official boss of the Bonnano family, Joseph Massino, who was incarcerated at the MDC.

18.  On or about November 23, 2004, the defendant BASCIANO saw Joseph Massino, the official boss of the Bonanno family, at the federal district courthouse in Brooklyn, New York.  At that time, BASCIANO proposed the murder of a federal law enforcement official involved in investigating and prosecuting members and associates of the Bonanno family, including BASCIANO.

19.  On or about December 3, 2004, the defendant VINCENT BASCIANO met Massino at the MDC.  BASCIANO discussed, among other things, the murder of Randolph Pizzolo, also known as "Randy."  BASCIANO reported that certain members and associates of the Bonanno family, acting at his direction, had murdered Pizzolo.

20.  Pizzolo's body was found on December 1, 2004 in the Greenpoint section of Brooklyn, New York.  Pizzolo's body had multiple gun shot wounds.  Pizzolo was an associate of the Bonanno family.

7

21.   Following the December 3, 2004 encounter with the
defendant VINCENT BASCIANO, Massino reported to federal law
enforcement officials the substance of BASCIANO's comments
regarding the proposed murder of a federal law enforcement official
and the murder of Pizzolo.

22.   On January 3, 2005 and January 7, 2005, the defendant
VINCENT BASCIANO met with Massino at the MDC.  Prior to those
meetings, Massino gave his consent to federal law enforcement
officials to record these conversations, and the conversations
between BASCIANO and Massino on January 3 and 7, 2005 were
recorded.

23.   During the two January 2005 meetings, the defendant
VINCENT BASCIANO and Massino spoke about, among other things, the
threat on the federal law enforcement official, the murder of
Pizzolo and the ongoing and future operation of the Bonanno family.

24.   During the January 3, 2005 conversation, the defendant
VINCENT BASCIANO explained his justification for ordering the
murder of Pizzolo.  In response to the question "Why didn't you
just chase him?", BASCIANO stated:  "You want to know why?  Because
he is a f-----g dangerous kid that don't f-----g listen."  Later in
the conversation, BASCIANO further discussed the murder of Pizzolo:
"I thought this kid would have been a good wake-up call for
everybody."

8

COUNT ONE
(Racketeering)

25.   The allegations contained in paragraphs 1 through 24 are realleged and incorporated as if fully set forth in this paragraph.

26.   In or about and between February 1997 and June 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT BASCIANO, also known as "Vinny Gorgeous" and "Vinny from the Bronx," DOMINICK CICALE, ANTHONY AIELLO, also known as "Ace" and "T," VINCENZO MASI, also known as "Vinny," FRANK ESPOSITO, also known as "Fat Frank," and EUGENE GALLO, also known as "Gene," together with others, being persons employed by and associated with the Bonanno family, an enterprise that engaged in, and the activities of which affected, interstate commerce, knowingly and intentionally conducted and participated, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of the racketeering acts set forth below.

RACKETEERING ACT ONE
(Murder/Murder Conspiracy)

27.   The defendants named below committed the following acts, either one of which alone constitutes racketeering act one:

9

A.    Conspiracy to Murder Randolph Pizzolo

28.   In or about and between November 2004 and December 1, 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT BASCIANO, DOMINICK CICALE and ANTHONY AIELLO, together with others, knowingly and intentionally conspired to cause the death of Randolph Pizzolo, also known as "Randy," in violation of New York Penal Law Sections 125.25(1) and 105.15.

B.    Murder of Randolph Pizzolo

29.   On or about December 1, 2004, within the Eastern District of New York, the defendants VINCENT BASCIANO, DOMINICK CICALE and ANTHONY AIELLO, together with others, with intent to cause the death of Randolph Pizzolo, also known as "Randy," caused his death, in violation of New York Penal Law Sections 125.25(1) and 20.00.

RACKETEERING ACT TWO
(Solicitation to Murder)

30.   On or about November 23, 2004, within the Eastern District of New York, the defendant VINCENT BASCIANO knowingly and intentionally solicited, requested, importuned and otherwise attempted to cause another person to cause the death of a federal law enforcement official whose identity is known to the grand jury, with intent that such other person cause the death of the federal

10

law enforcement official in violation of New York Penal Law Section 125.25(1), in violation of New York Penal Law Section 100.10.

<u>RACKETEERING ACT THREE</u>
(Solicitation to Murder/Murder Conspiracy)

31.   The defendant named below committed the following acts, either one of which alone constitutes racketeering act three:

A.   <u>Conspiracy to Murder Patrick DeFilippo</u>

32.   In or about and between August 2003 and November 19, 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT BASCIANO, together with others, knowingly and intentionally conspired to cause the death of Patrick DeFilippo, also known as "Patty from the Bronx," in violation of New York Penal Law Sections 125.25(1) and 105.15.

B.   <u>Solicitation to Murder Patrick DeFilippo</u>

33.   In or about and between August 2003 and November 19, 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT BASCIANO, together with others, knowingly and intentionally solicited, requested, importuned and otherwise attempted to cause another person to cause the death of Patrick DeFilippo, also known as "Patty from the Bronx," with intent that such other person cause the death of Patrick DeFilippo in violation of New York Penal Law

11

Section 125.25(1), in violation of New York Penal Law Sections 100.10 and 20.00.

RACKETEERING ACT FOUR
(Extortionate Collection of Credit – John Doe #1)

34.   The defendants named below committed the following acts, either one of which alone constitutes racketeering act four:

A.   Extortionate Collection of Credit Conspiracy

35.   On or about and between October 1, 2004 and November 12, 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DOMINICK CICALE, ANTHONY AIELLO, VINCENZO MASI, FRANK ESPOSITO and EUGENE GALLO, together with others, knowingly and intentionally conspired to use extortionate means to collect extensions of credit from John Doe #1, an individual whose identity is known to the grand jury, in violation of Title 18, United States Code, Section 894(a)(1).

1.

B.   Extortionate Collection of Credit

36.   On or about and between October 1, 2004 and November 12, 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DOMINICK CICALE, ANTHONY AIELLO, VINCENZO MASI, FRANK ESPOSITO and EUGENE GALLO, together with others, knowingly and intentionally

12

participated in the use of extortionate means to collect and attempt to collect extensions of credit from John Doe #1, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

RACKETEERING ACT FIVE
(Extortionate Collection of Credit - John Doe #2)

37. The defendants named below committed the following acts, either one of which alone constitutes racketeering act five:

A.   Extortionate Collection of Credit Conspiracy

38. In or about and between September 2003 and June 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY AIELLO and VINCENZO MASI, together with others, knowingly and intentionally conspired to use extortionate means to collect extensions of credit from John Doe #2, an individual whose identity is known to the grand jury, in violation of Title 18, United States Code, Section 894(a)(1).

B.   Extortionate Collection of Credit

39. In or about and between September 2003 and June 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY AIELLO and VINCENZO MASI, together with others, knowingly and intentionally participated in the use of extortionate means to collect and attempt to collect extensions of credit from John Doe

13

#2, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

### RACKETEERING ACT SIX
(Extortionate Collection of Credit – John Doe #3)

40.    The defendants named below committed the following acts, either one of which alone constitutes racketeering act six:

A.    Extortionate Collection of Credit Conspiracy

41.    In or about and between September 2003 and June 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY AIELLO and VINCENZO MASI, together with others, knowingly and intentionally conspired to use extortionate means to collect extensions of credit from John Doe #3, an individual whose identity is known to the grand jury, in violation of Title 18, United States Code, Section 894(a)(1).

B.    Extortionate Collection of Credit

42.    In or about and between September 2003 and June 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY AIELLO and VINCENZO MASI, together with others, knowingly and intentionally participated in the use of extortionate means to collect and attempt to collect extensions of credit from John Doe

14

#3, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

RACKETEERING ACT SEVEN
(Illegal Gambling - The Esposito Bookmaking Operation)

43.   The defendants named below committed the following acts, either one of which alone constitutes racketeering act seven:

A.   <u>Federal Gambling Law</u>

44.   In or about and between 1999 and November 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants FRANK ESPOSITO and EUGENE GALLO, together with others, knowingly and intentionally conducted, financed, managed, supervised, directed and owned all or part of an illegal gambling business, to wit: a gambling business involving bookmaking, which operated in violation of the laws of New York State, to wit: New York Penal Law Sections 225.05, 225.10(1) and 20.00, which involved five or more people who conducted, financed, managed, supervised, directed and owned all or part of the business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day, in violation of Title 18, United States Code, Sections 1955 and 2.

B.    State Gambling Law

45.    In or about and between 1999 and November 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants FRANK ESPOSITO and EUGENE GALLO, together with others, knowingly and intentionally advanced and profited from unlawful gambling activity by engaging in bookmaking in that they received and accepted in any one day more than five bets totaling more than five thousand dollars, in violation of New York Penal Law Sections 225.10(1) and 20.00.

RACKETEERING ACT EIGHT
(Illegal Gambling – The Cicale Bookmaking Operation)

46.    The defendants named below committed the following acts, either one of which alone constitutes racketeering act eight:

A.    Federal Gambling Law

47.    In or about and between January 2004 and January 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DOMINICK CICALE, ANTHONY AIELLO and VINCENZO MASI, together with others, knowingly and intentionally conducted, financed, managed, supervised, directed and owned all or part of an illegal gambling business, to wit: a gambling business involving bookmaking, which operated in violation of the laws of New York State, to wit: New

16

York Penal Law Sections 225.05, 225.10(1) and 20.00, which involved five or more people who conducted, financed, managed, supervised, directed and owned all or part of the business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day, in violation of Title 18, United States Code, Sections 1955 and 2.

B.   <u>State Gambling Law</u>

48.   In or about and between January 2004 and January 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DOMINICK CICALE, ANTHONY AIELLO and VINCENZO MASI, together with others, knowingly and intentionally advanced and profited from unlawful gambling activity by engaging in bookmaking in that they received and accepted in any one day more than five bets totaling more than five thousand dollars, in violation of New York Penal Law Sections 225.10(1) and 20.00.

<u>RACKETEERING ACT NINE</u>
(Robbery Conspiracy - John Doe #4)

49.   In or about and between August 2004 and November 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DOMINICK

17

CICALE, ANTHONY AIELLO and VINCENZO MASI, together with others,
knowingly and intentionally conspired to forcibly steal property,
to wit: money, from John Doe #4, an individual whose identity is
known to the grand jury, while aided by another person actually
present, in violation of New York Penal Law Sections 160.10(1) and
105.10.

### RACKETEERING ACT TEN
(Robbery Conspiracy - John Doe #5)

50.   In or about and between January 2004 and July 2004,
both dates being approximate and inclusive, within the Eastern
District of New York and elsewhere, the defendants ANTHONY AIELLO
and VINCENZO MASI, together with others, knowingly and
intentionally conspired to forcibly steal property, to wit: money,
from John Doe #5, an individual whose identity is known to the
grand jury, while aided by another person actually present, in
violation of New York Penal Law Sections 160.10(1) and 105.10.

### RACKETEERING ACT ELEVEN
(Robbery Conspiracy - Cafe Vienna)

51.   In or about and between February 1997 and March 5,
1997, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendant ANTHONY
AIELLO, together with others, knowingly and intentionally conspired
to obstruct, delay and affect commerce, and the movement of

18

articles and commodities in commerce, by robbery, in that the defendant ANTHONY AIELLO and others agreed to commit a robbery of the Cafe Vienna, located at 66-11 Forest Avenue, Queens, New York, and its employees and patrons, in violation of Title 18, United States Code, Section 1951(a).

(Title 18, United States Code, Sections 1962(c), 1963 and 3551 et seq.)

## COUNT TWO
### (Racketeering Conspiracy)

52. The allegations contained in paragraphs 1 through 24 are realleged and incorporated as if fully set forth in this paragraph.

53. In or about and between February 1997 and June 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DOMINICK CICALE, ANTHONY AIELLO, also known as "Ace" and "T," VINCENZO MASI, also known as "Vinny," FRANK ESPOSITO, also known as "Fat Frank," and EUGENE GALLO, also known as "Gene," together with others, being persons employed by and associated with the Bonanno family, an enterprise that engaged in, and the activities of which affected, interstate commerce, knowingly and intentionally conspired to violate Title 18, United States Code, Section 1962(c), that is, to

19

conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5).

54.    The pattern of racketeering activity through which the defendants DOMINICK CICALE, ANTHONY AIELLO, also known as "Ace" and "T," VINCENZO MASI, also known as "Vinny," FRANK ESPOSITO, also known as "Fat Frank," and EUGENE GALLO, also known as "Gene," together with others, agreed to conduct the affairs of the enterprise consisted of the acts set forth in paragraphs 27 through 29 and 34 through 51 of Count One, as Racketeering Acts 1 and 4 through 11, which are realleged and incorporated as if fully set forth herein.   The defendants agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

(Title 18, United States Code, Sections 1962(d), 1963 and 3551 et seq.)

### COUNT THREE
(Conspiracy to Commit Murder in Aid of Racketeering)

55.    The allegations contained in paragraphs 1 through 24 are realleged and incorporated as if fully set forth in this paragraph.

56.   At all times relevant to this superseding indictment, the Bonanno family constituted an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that was engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

57.   The Bonanno family enterprise, through its members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, acts involving murder, extortion and gambling, in violation of New York State Penal Law, acts indictable under Title 18, United States Code, Sections 892, 893 and 894 (the making, financing, and collecting of extortionate extensions of credit), acts indictable under Title 18, United States Code, Section 1951 (extortion), acts indictable under Title 18, United States Code, Section 1955 (gambling), and acts involving narcotics trafficking in violation of Title 21, United States Code, Sections 841 and 846.

58.   In or about and between November 2004 and December 1, 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT

BASCIANO, also known as "Vinny Gorgeous" and "Vinny from the Bronx," DOMINICK CICALE and ANTHONY AIELLO, also known as "Ace" and "T," together with others, for the purpose of gaining entrance to and maintaining and increasing position in the Bonanno family, an enterprise engaged in racketeering activity, knowingly and intentionally conspired to murder Randolph Pizzolo, also known as "Randy," in violation of New York Penal Law Sections 125.25(1) and 105.15.

(Title 18, United States Code, Sections 1959(a)(5) and 3551 et seq.)

## COUNT FOUR
### (Murder in Aid of Racketeering)

59.   The allegations contained in paragraphs 1 through 24, 56 and 57 are realleged and incorporated as if fully set forth in this paragraph.

60.   On or about December 1, 2004, within the Eastern District of New York and elsewhere, the defendants VINCENT BASCIANO, also known as "Vinny Gorgeous" and "Vinny from the Bronx," DOMINICK CICALE and ANTHONY AIELLO, also known as "Ace" and "T," together with others, for the purpose of gaining entrance to and maintaining and increasing position in the Bonnano family, an enterprise engaged in racketeering activity, knowingly and

intentionally murdered Randolph Pizzolo, also known as "Randy," in violation of New York Penal Law Sections 125.25(1) and 20.00.

(Title 18, United States Code, Sections 1959(a)(1), 2 and 3551 et seq.)

COUNT FIVE
(Using, Carrying and Possessing a Firearm)

61.   The allegations contained in paragraphs 1 through 24 are realleged and incorporated as if fully set forth in this paragraph.

62.   On or about December 1, 2004, within the Eastern District of New York, the defendants VINCENT BASCIANO, also known as "Vinny Gorgeous" and "Vinny from the Bronx," DOMINICK CICALE and ANTHONY AIELLO, also known as "Ace" and "T," together with others, knowingly and intentionally used and carried a firearm during and in relation to a crime of violence, to wit: the crimes charged in Counts Three and Four, and knowingly and intentionally possessed such firearm, which firearm was discharged in furtherance of such crimes of violence.

(Title 18, United States Code, Sections 924(c)(1)(A)(iii), 2 and 3551 et seq.)

23

COUNT SIX
(Conspiracy to Commit Murder in Aid of Racketeering)

63.   The allegations contained in paragraphs 1 through 24, 56 and 57 are realleged and incorporated as if fully set forth in this paragraph.

64.   In or about and between August 2003 and November 19, 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT BASCIANO, also known as "Vinny Gorgeous" and "Vinny from the Bronx," together with others, for the purpose of gaining entrance to and maintaining and increasing position in the Bonanno family, an enterprise engaged in racketeering activity, knowingly and intentionally conspired to murder Patrick DeFilippo, also known as "Patty from the Bronx," in violation of New York Penal Law Sections 125.25(1) and 105.15.

(Title 18, United States Code, Sections 1959(a)(5) and 3551 et seq.)

COUNT SEVEN
(Assault in Aid of Racketeering)

65.   The allegations contained in paragraphs 1 through 24, 56 and 57 are realleged and incorporated as if fully set forth in this paragraph.

24

66.   On or about November 12, 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DOMINICK CICALE, ANTHONY AIELLO, also known as "Ace" and "T", and VINCENZO MASI, also known as "Vinny," together with others, for the purpose of gaining entrance to and maintaining and increasing position in the Bonanno family, an enterprise engaged in racketeering activity, knowingly and intentionally assaulted John Doe #1 with a dangerous weapon, in violation of New York Penal Law Sections 120.05(2) and 20.00.

(Title 18, United States Code, Sections 1959(a)(3), 2 and 3551 et seq.)

## COUNT EIGHT
(Extortionate Collection of Credit Conspiracy – John Doe #1)

67.   The allegations contained in paragraphs 1 through 24 are realleged and incorporated as if fully set forth in this paragraph.

68.   On or about and between October 1, 2004 and November 12, 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DOMINICK CICALE, ANTHONY AIELLO, also known as "Ace" and "T," VINCENZO MASI, also known as "Vinny," FRANK ESPOSITO, also known as "Fat Frank," and EUGENE GALLO, also known as "Gene," together with others,

25

knowingly and intentionally conspired to use extortionate means to collect extensions of credit from John Doe #1.

(Title 18, United States Code, Sections 894(a)(1) and 3551 et seq.)

<u>COUNT NINE</u>
(Extortionate Collection of Credit - John Doe #1)

69.  The allegations contained in paragraphs 1 through 24 are realleged and incorporated as if fully set forth in this paragraph.

70.  On or about and between October 1, 2004 and November 12, 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DOMINICK CICALE, ANTHONY AIELLO, also known as "Ace" and "T," and VINCENZO MASI, also known as "Vinny," FRANK ESPOSITO, also known as "Fat Frank," and EUGENE GALLO, also known as "Gene," together with others, knowingly and intentionally participated in the use of extortionate means to collect and attempt to collect extensions of credit from John Doe #1.

(Title 18, United States Code, Sections 894(a)(1), 2 and 3551 et seq.)

26

<u>COUNT TEN</u>
(Extortionate Collection of Credit Conspiracy – John Doe #2)

71.   The allegations contained in paragraphs 1 through 24 are realleged and incorporated as if fully set forth in this paragraph.

72.   In or about and between September 2003 and June 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY AIELLO, also known as "Ace" and "T," and VINCENZO MASI, also known as "Vinny," together with others, knowingly and intentionally conspired to use extortionate means to collect extensions of credit from John Doe #2.

(Title 18, United States Code, Sections 894(a)(1) and 3551 <u>et seq.</u>)

<u>COUNT ELEVEN</u>
(Extortionate Collection of Credit – John Doe #2)

73.   The allegations contained in paragraphs 1 through 24 are realleged and incorporated as if fully set forth in this paragraph.

74.   In or about and between September 2003 and June 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY AIELLO, also known as "Ace" and "T," and VINCENZO MASI, also known

27

as "Vinny," together with others, knowingly and intentionally participated in the use of extortionate means to collect and attempt to collect extensions of credit from John Doe #2.

(Title 18, United States Code, Sections 894(a)(1), 2 and 3551 et seq.)

## COUNT TWELVE
(Extortionate Collection of Credit Conspiracy – John Doe #3)

75.   The allegations contained in paragraphs 1 through 24 are realleged and incorporated as if fully set forth in this paragraph.

76.   In or about and between September 2003 and June 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY AIELLO, also known as "Ace" and "T," and VINCENZO MASI, also known as "Vinny," together with others, knowingly and intentionally conspired to use extortionate means to collect extensions of credit from John Doe #3.

(Title 18, United States Code, Sections 894(a)(1) and 3551 et seq.)

## COUNT THIRTEEN
(Extortionate Collection of Credit – John Doe #3)

77.   The allegations contained in paragraphs 1 through 24 are realleged and incorporated as if fully set forth in this paragraph.

78.   In or about and between September 2003 and June 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY AIELLO, also known as "Ace" and "T," and VINCENZO MASI, also known as "Vinny," together with others, knowingly and intentionally participated in the use of extortionate means to collect and attempt to collect extensions of credit from John Doe #3.

(Title 18, United States Code, Sections 894(a)(1), 2 and 3551 et seq.)

## COUNT FOURTEEN
(Illegal Gambling – Esposito Bookmaking Operation)

79.   The allegations contained in paragraphs 1 through 24 are realleged and incorporated as if fully set forth herein in this paragraph.

80.   In or about and between 1999 and November 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants FRANK ESPOSITO, also known as "Fat Frank," and EUGENE GALLO, also known as "Gene,"

29

together with others, knowingly and intentionally conducted,

financed, managed, supervised, directed and owned all or part of an

illegal gambling business, to wit: a gambling business involving

bookmaking, which operated in violation of the laws of the State of

New York, to wit: New York Penal Law Sections 225.05, 225.10(1) and

20.00, which involved five or more people who conducted, financed,

managed, supervised, directed and owned all or part of the business

and which remained in substantially continuous operation for a

period in excess of thirty days and had a gross revenue of at least

$2,000 in any single day.

        (Title 18, United States Code, Sections 1955, 2 and 3551

et seq.)

                          COUNT FIFTEEN
              (Illegal Gambling - Cicale Bookmaking Operation)

        81.   The allegations contained in paragraphs 1 through 24

are realleged and incorporated as if fully set forth in this

paragraph.

        82.   In or about and between January 2004 and January

2005, both dates being approximate and inclusive, within the

Eastern District of New York and elsewhere, the defendants DOMINICK

CICALE, ANTHONY AIELLO, also known as "Ace" and "T," and VINCENZO

MASI, also known as "Vinny," together with others, knowingly and

intentionally conducted, financed, managed, supervised, directed and owned all or part of an illegal gambling business, to wit: a gambling business involving bookmaking, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.05, 225.10(1) and 20.00, which involved five or more people who conducted, financed, managed, supervised, directed and owned all or part of the business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day.

(Title 18, United States Code, Sections 1955, 2 and 3551 et seq.)


A TRUE BILL


_____

FOREPERSON


_____

ROSLYNN R. MAUSKOPF
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK


31

F. # 2005R00060
FORM DBD-34

CR. No.  05 CR 0060 (S-3) (NGG)

# UNITED STATES DISTRICT COURT

### EASTERN District of NEW YORK

**CRIMINAL  Division**

## THE UNITED STATES OF AMERICA

vs.

VINCENT BASCIANO, ET AL.,

*Defendants.*

# INDICTMENT

T. 18, U.S.C., §§ 894 (a) (1), 924 (c), (1) (A) (iii),
1955, 1959 (a) (1), 1959 (a) (3),
1959 (a) (5), 1959 (a) (6), 1962 (c), 1962 (d),
1963, 2 and 3551 et seq.)

_____

A true bill.

_____
                                    *Foreman*

Filed in open court this _____

of _____ A.D. 19 _____

                                         *Clerk*

Bail, $ _____

_____
THOMAS SEIGEL, Assistant U.S. Attorney  (718) 254-6339